Good morning, Your Honors, and may it please the Court, with the Court's permission, I'd like to reserve three minutes for rebuttal, please. Your Honors, what is at stake in this case is whether the government can violate its own regulations to undo its mistakes, and relatedly, whether the BIA actually has the authority to circumvent its own regulations that have been promulgated by the Attorney General under its so-called sua sponte authority. And, Your Honor, the answer to that is no. I'd briefly like to talk about two facts that frame both of these issues. One is that the government actually had a full opportunity to litigate a removal case against the petitioner. That is true. But, as I understand it, at that particular time, the BIA was looked at the case, and there was a motion for reconsideration that was put in, and the BIA returned it to the IJ and said, reconsider. Yes, Your Honor, that's correct. And, in response, I'd like to make two points. If it is assumed that all the BIA did was reconsider, then all the effect the reconsideration has, and this is in the regulations, is to just look at that one case that was... Well, but that isn't exactly what was said, is it? Your Honor, the BIA said, we will remand further, but the BIA actually does not have the authority... They said, we will remand to the IJ to permit him to consider this case, which is Jordison v. Gonzalez. And then, in the order, it said, and the decision, the board's decision is vacated. They have a right to do that, don't they? I mean, there's plenty of authority for them to have the right to vacate their own decision. They have a right to vacate their own decision. And then, once vacated, they said, and proceedings are remanded for, and now I quote, any further proceedings the IJ deems appropriate, and for a new decision. Yes, Your Honor, that's correct. Our position is that once a final order of removal is entered, the mechanism used to vacate the order was a motion to reopen. That is undisputed, because there was a final order of removal. The jurisdiction was already vested into this court. And so, the only way you could undo that is through a motion to reopen, and that is undisputed. Now, but just a minute. You're not challenging the motion for reconsideration was okay to grant that, are you? No, Your Honor. The reconsideration of. So, what are you challenging? The reconsideration of. They vacated their prior order. They said to the immigration judge, any proceedings the IJ deems appropriate. So, at that point, the IJ has a pretty good idea. There's nothing in front of him except what he had in front of him before, and why should there be a motion to reopen? We've already got the case in front of us. Because, Your Honor, you cannot, once there's a final order of removal, you cannot litigate a second case without. They didn't litigate a second case. They had the same case, and they sent it back on a motion to reconsider. I mean, we do that quite a bit in the federal court system. Where there's a motion to reconsider, we start over because the judge says, well, I might have made a mistake. You better start again, which is exactly what happened here. Except it didn't, Your Honor. The mistake that was the basis of reconsideration was that we didn't look at this one case. Well, but the problem is that they did consider the one case. He opened it up for every other thing because he saw there any further proceedings that I find appropriate. So he opened it up, and when the government saw it opened up, they abandoned what they wanted to say in the first case because they looked at Jordanson and thought, well, I don't think Jordanson's going to help us. Let's go with something else. So that's why. I don't know why it was race judicata. I don't know why it's law of the case. The government provided a different basis upon which to rule. Your Honor, so it cannot be disputed that the case was reopened, to use the phrase. It had to be reopened. Well, it wasn't reopened. It was remanded for a reconsideration. Well, Your Honor, if it was remanded just for reconsideration, the regulations say you only look at that one error and then you either reverse or, of course. So you're saying that any further proceedings reopened. It had to have reopened. If it reopened, then they didn't need to grant a motion to reopen, did they? Except they didn't satisfy the statutory guidelines that are spelled out as to when a motion has, what needs to be satisfied for reopening to happen. And it is black-letter law, not just in this procedural mechanism used in BIA, but everywhere else, that to reopen you need to establish the predicate facts that there was something new that couldn't have been presented before. And here that threshold determination was never made. So what we have here is a situation where the BIA can simply use this authority that cannot be traced back to the regulations in any way and say we'll use the word remand and that will just let us circumvent these regulations. Let's say, if I may quote, the board shall not, a motion to reopen shall not be granted unless it appears to the board that evidence sought to be offered is material and was not available and could not have been discovered and presented at the former hearing. That was never satisfied. There's no dispute about that. So. Counsel, the order that came back initially from BIA was very broad, was it not? It was extremely broad. Your Honor, the wording might be broad, but the BIA's authority only comes from the regulations. It said that the IJ is to conduct any further proceedings that the immigration judge deems appropriate in order to have a new decision. That's as broad of a language as you could possibly have, isn't it? Yes, Your Honor, the language is broad, but our position is that they didn't have the authority to allow that kind of proceeding after final order of removal was entered and the case had to be reopened under the statutory guidelines. And because the showing was never made that there was new evidence. Was there a final order? Yes, there was a final order. And the case was already in the Ninth Circuit based on a final order. For jurisdiction to vest in the Ninth Circuit, there has to be a final order. Opening briefs were filed in this case in that instance. So there was undisputably a final order that was entered. And to extinguish that final order, you have to follow the statutory procedure. And the only way to do it is to motion to reopen. And that's strictly governed by these regulations. Okay. If there are other questions on that, I'm glad to hear them. Otherwise, you've got another issue, don't you? Yes, Your Honor. I mean, your time is running, so I'm just trying to move you along. Absolutely. Thank you, Your Honor. The second issue we have is a substantive issue setting aside the procedural aspect of it, which is that the removal that was in the second proceedings that was finally entered against my client was that his conviction was an explosive offense as an aggravated felony. Right. And our position is that it is not. And the Third Circuit just came out recently agreeing with us that this conviction for an attempted arson does not qualify as a categorical. Well, when we're really looking at this, given Deschamps, I say Deschamps, but Deschamps, I don't know how to pronounce that. Yes, Your Honor. I say Deschamps only because somebody told me that's French. But nonetheless, when you look at that, if you look at Deschamps, what we're really trying to do is we're trying to compare 455, as I understand it, which is a California statute. We're trying to compare that to the two statutes that we have in the federal government's arsenal, which are 844F1 or I and 844I, right? That's correct, Your Honor. So if I look at Section 455 and I look at these statutes, which are 844F1 and I, it seems to me that comparing those to each other, I have to determine, first of all, if the 455 is divisible or if it isn't divisible. Because Deschamps would suggest that if it's not divisible, we have to compare and see if they're alike. But if it is divisible, then I have to go and see whether I can divide it anyway. Now, it seems obvious that A and B are divisible, but we're really not talking about A and B here. We're talking about A because we're comparing, as I understand it, 455A to the 844F1 and I, right? That's correct, Your Honor. Now, if I compare those, it seems to me that 844F1 and 844I are like 455A, except that the federal statutes have an extra element, which is an explosive, right? That's correct, Your Honor. So therefore, I can say to myself, one could be convicted under 844F1 or 844I without being convicted of 455A. That's correct, Your Honor. However, I cannot convict under 455A without being convicted under 844F1 and 844I. I mean, if I take the elements of 455A, there's no question those elements are in 844F1 or 844I in that statute. If it's divisible, which I suggest it is, that any person who willingly and maliciously attempts, the first attempts to set fire to or attempts to burn, and the second counsels or procures the burning, and the third who commits, that would make it divisible, and it's no question that two and three would not be applicable here because they are in the state statute but not in the federal statute. So I have to determine whether the first part of 455 equals the federal statute. Would you agree? Yes, Your Honor. So if I do that, it seems to me that in that situation, it's a categorical match. The only thing that we really worry about, it would seem, on the categorical match, is whether there is, if you will, whether I can find in the complaint exactly what we have in 455A, which would be matching to 844F1 and 844I. Yes, Your Honor. And then if I read the complaint, and I read the complaint so that I could make sure, it seems to me that the complaint is pretty clear. It isn't even an or. If I read the complaint, it says that the above-named defendant committed the felony in or about August the 30th in the county of Riverside. He did willfully, unlawfully, maliciously attempt to set fire to, didn't say or burn. It says and burn, and cause to be burned, and aid counsel and procure the burning of a structured forest land and property, and committed an act preliminary thereto and in furtherance thereof. So the complaint doesn't divide it into ors that the statute does. It says and. And your client bought into that and said, yeah, that's what I did. So now I'm at a section where I say to myself, I guess that's a categorical match. I'd like to raise two points of response, Your Honor. One is that the statute still requires, it says the property that's subject to the arson needs to be used in interstate. It needs to be used in interstate or foreign commerce. And the Supreme Court's in Jones said that that wasn't merely a jurisdictional element. It was actually used to narrow the categories of offenses that come within the purview of the statute. Well, I guess I'm worried about whether that's what Jones really said. It seems to me that these are the element, just jurisdictional elements, if I look at Jones. That all they are is limiting the federal government's jurisdiction, which avoids a constitutional issue of infringing on the state's conduct, traditional conduct codes, and therefore they are not something I need to pay much attention to. No, Your Honor, because the Supreme Court in Jones said because the phrase used is in the statute, that needs to be given meaning. And the only way you can give it meaning is to make sure that the property is used actively versus passively. Now, if it was just passively, that would be expansive, and I would agree with Your Honor there. But the Supreme Court said it needs to be actively used in interstate commerce, which means what they're really trying to get into, fall into this category are like commercial properties and commercial, and not private residences, whereas this California state statute covers private residences and your own residence. And that definitely was not intended to be criminalized in this statute per Jones. Therefore, it is actually much broader, the California statute, about the kind of arson that it covers versus the federal statute. If that's so, how would it make sense to hold that a person who burned down a rental building could be subject to an aggravated felony, which is Russell versus the United States, and that a person who burned down a private residence could not? How would that make sense? Well, Your Honor, if Congress intended to include all arson, it could have referred specifically to all arson as a general offense. Well, but the problem comes in that I'm trying to determine whether this is just trying to limit the federal government's jurisdiction from what the state might do, or whether this really makes a substantive difference. And when I read that and I think about it, then that was the question that hit me. Why? What sense would it make to say that a person who burned down a rental building could be subject to an aggravated felony when a person who burns down a private residence couldn't? And that leads me to conclude this is jurisdictional and not substantive. Your Honor, I see my time is up. You may answer my question. Yes, Your Honor. Since Judge Gould gave me the conducting power, I'll let you do it. Thank you, Your Honor. I appreciate Your Honor's point, but the task here is to actually give effect to what's been written in the statute. Well, that's what I'm trying to do. I'm trying to determine whether it's jurisdictional or not. It would be merely jurisdictional if it was a wide, expansive exercise of commerce clause. But this, because the word used in was how the statute was drafted, and the Supreme Court said, that actually means we were trying to narrow the class of offenses. And this is what the Third Circuit specifically found, and that actually had to have meaning. And to Your Honor's point, whether a certain offense is aggravated felony and a certain offense is not, sometimes it doesn't make sense. Well, it really doesn't make sense when generally in these kind of circumstances, the private residence would be the one we would be most protecting. Your Honor, there are other ways. For example, there is the initial charge of crime of violence. It could fall under that. There are other provisions where that felony could be an aggravated felony. For example, crime of violence. They're the only exception is you can't burn down your own residence, but any other residence is fine. So it's not a case that will create an absurd result. If you look at the whole scheme as a whole, that your situation could be covered hypothetically in another instance. It's just that this statute is actually very specific, and Your Honor, the interpretation Your Honor is suggesting would be much more expansive than what was written. Thank you, Your Honor. Thank you, and I know I ate into your time.  Well, let me ask one question, if you don't mind the extending the time. Could you say what is the precise regulatory language that you contend restricts the ability of the BIA to just say we vacate our order? Go back and start over. Sure, Your Honor. It is, page 58 of our appendix has got the statute. It is 8 CFR 1000, 8 CFR 1003.2, and it specifically governs reopenings and reconsiderations. And section C there, a little below, says a motion to reopen proceedings shall not be granted unless it appears to the board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. And that showing was never made in this case. That is undisputed. There's nothing in the record that there was any attempt made by the government to explain how they're trying to do the second time around actually fit this mold. So that's our language from this regulation, Your Honor.  Thank you, Your Honor. All right, we'll turn to the government. Good morning, Your Honors. May it please the Court, Jocelyn Wright on behalf of Respondent, United States Attorney General. Let me begin by addressing the very last point that Petitioner's Counsel made regarding the motions to reopen. The motion to reopen regulation is not relevant to this case, to this particular case, because the board didn't have any occasion to reach that issue. And to back up even a little bit further, Petitioner's Counsel keeps characterizing it as undisputed that the motion to reopen requirements were never satisfied. It is not undisputed. Because the board never had occasion to reach the motion to reopen, it never had any occasion to rule on whether or not the requirements for motions to reopen was ever satisfied. So far from being undisputed, the issue was never litigated. What the board did in this case was instead grant the government's motion to reconsider sua sponte. And when it did so, it issued a remand order that was very broadly worded and returned the case to the immigration judge for consideration of the Jordison case in the first instance, but also for further proceedings as the immigration judge saw fit. So when the case was returned to the immigration judge, the immigration judge appropriately recognized that what he had before him was the case that was functionally reopened, and it was proceeding on the original notice to appear, the original charging document. So are there any cases that are similar to what happened in this particular case that I can look at? I mean, that was my biggest problem in trying to understand exactly what you're arguing because it didn't seem to me that the case ever ended. And I've had a few people, I've had the Ninth Circuit try to reverse me and say reconsider and send it back, and I had another trial. So I know what the judge had in front of him, but I was looking at, frankly, now we have not the normal, but we have the immigration regulations, and I was looking for a case that would help me to make that determination. None come off the top of my head, Your Honor, but I'd be willing to submit supplemental authorities once I do a little bit of further research. But nothing prohibits the board from reconsidering a decision in which it has, a case in which it has issued a final decision. For example, the case that we rely on for the substantive portion of this case, Vasquez Unions, the board, sua sponte, reconsidered a published decision, and it reissued a new published decision that superseded the old one. So to accept this, please, Your Honor. Judge Gould, if I could ask you a question on this same line. In terms of the general power of the board, let's say the board has made a final decision, but then it has second thoughts. And the board members think, gee, we just had a bad day when we decided that. Now let's vacate it and start over. Are they allowed to do that? They have that authority, Your Honor. They have that authority. Is there a case that has that authority? It's the regulatory authority of sua sponte to reopen or reconsider a case in which it has previously issued a final decision. And there's no restriction or tag on that? Not as far as I know, Your Honor. Okay, thank you. Unless the court has any further questions. Doesn't it put the government to a very interesting position that it can just automatically say to the board, we'd like you just to sua sponte, just open it up, turn it back, we want a second bite at this apple. Doesn't that kind of turn the whole concept of the administrative procedures on its head, that any time you feel like it just doesn't work right, like Judge Gould said, it was a bad day, that I can have the board completely reopen and just send it back and let an immigration judge start completely over with brand-new facts, brand-new circumstances. I mean, that would seem to make a very difficult situation for anyone to be prepared for. I think it would, Your Honor. But in this instance, it's not so much that the board just does this randomly or arbitrarily. It has published cases where they say they will only exercise their sua sponte reopening authority in exceptional circumstances. And again, it's not just the government who can ask the board to reconsider or reopen a case sua sponte. Aliens do that as well all the time. Whether the board grants it is a different matter. But in this case, what were the exceptional circumstances that you see from your position? Well, the Board of Immigration Appeals said in its order granting reconsideration that because the Jordison case went to the very heart of whether Mr. Sandoval Gomez was removable, it can amount to an exceptional circumstance and it affirmatively exercises discretion to sua sponte reconsider the case in light of that. And then it remanded for the immigration judge to reconsider the case in light of Jordison because Jordison came out after the immigration judge already issued his decision in this case. Which makes sense because that's that narrow issue that counsel is referring to, that that should be narrowly tailored, but instead there was the wide open bring in the kitchen sink this time. Well, the board could have, certainly it was well within its authority and discretion to limit the purpose of the remand and the scope of the remand, but it didn't. It remanded the case for the purpose of determining petitioner's removability, but it didn't narrow or limit the scope of the remand. And this court has recognized in a published decision that unless the court, unless the board specifically and explicitly limits the scope of the remand order, then the immigration judge is free to hear according to, pursuant to the regulations that govern the immigration proceedings, any matter or motion that is properly brought to his attention by motion of either party. And in this case, DHS was within its authority and it had the regulatory authority to amend or supersede the charging document as it saw fit once it was remanded to the immigration judge. Moving on to the substantive issue regarding whether or not his conviction under California law for attempted arson is an aggravated felony in that it is a crime related to an explosive materials offense. The government submits that the court's decision in Castillo controls that inquiry. The Board of Immigration Appeals, after briefing in this case was completed, issued matter of Bautista, which is, which is directly on point and assesses whether or not a state conviction for arson is an aggravated felony under the relevant aggravated felony statute that the court is reviewing in this case. And I understand that the Third Circuit disagreed with the board's analysis and it vacated Bautista, the precedential decision, insofar as it relates to Bautista and cases arising in the Third Circuit. But because the Board of Immigration Appeals legislates nationwide, just because one circuit court of appeals has disagreed with its precedential decision, that doesn't mean that it is invalid all over the country. Rather, it's invalid only in that particular circuit and it remains valid elsewhere, including this court and this circuit. Did you hear my questioning of counsel? Yes, Your Honor. As to how I went through. That isn't exactly Bautista's manner of how to do this, is it? No, Your Honor. And, I mean, I'm, go ahead. Just to clarify, which analysis, Your Honor, the board's or the Third Circuit's and Bautista? The board's. Yes, Your Honor. And I guess I'm of some concern in that I now have to, if you will, compare statutes. And if I compare the statutes, which is what I did with counsel, I came to this conclusion, the conclusions that I did, and the only thing that I could really talk about that was really different or difficult for me was the part about the any building or vehicle or personal or real property in whole or in part that's in the federal statutes. Have you given consideration to whether that would be jurisdictional or substantive? Oh, in whole or in part owned or possessed? Any building, vehicle, or other real property in whole or part possessed or leased to the United States or any department or agency thereof. So that would only be subsection F1. Right. Well, there's F1 and then there's I, which is any building, vehicle, or other real property, real or personal property used in interstate or foreign commerce. Right. Those are both additional elements which are not in 455. That's correct, Your Honor. And the board's decision, the precedential decision in Bautista, limited its analysis, I believe, to I. It said in a footnote that it wasn't going to opine on F1 because I was dispositive. Right. So with respect to F1, I have no authority as to that. My argument on that would be to extend the same analysis that applies to subsection I, to subsection F1. And the reason that the fact that the Third Circuit disagreed with the board's decision in Bautista, I don't think helps Petitioner because the court's jurisprudence in Castillo, in this case, differs materially with the Third Circuit's analysis in Bautista. The Third Circuit said that the term, Congress's use of the term defined in was broader than when it used the term described in.  Whereas Castillo is exactly the opposite. Castillo says the term described in describes a much more, is a looser standard, and encompasses more than when Congress meant to use the phrase defined in. So for the court to depart from Castillo would mean, I mean, for the court to agree with the Third Circuit's analysis in Bautista would mean that it would have to depart from circuit precedent in Castillo. And because this is a panel decision, it can't be overruled by another panel. And so I believe that the court's analysis with respect to the substantive part of this case has to be informed by Castillo, is controlled by Castillo. And so, and because Castillo is consistent with the board's analysis, not only in this case, but in Vasquez Munoz too, as well as in Bautista, then the board's decision should be accorded deference. Unless the court has any further questions.  Thank you very much for your argument. I did steal all your thunder and took all your time. If you want 30 seconds, I'll give it to you. Thank you, Your Honor. I would just like to bring the court's attention to one point. So it's been conceded that the way the proceedings went back was on a motion to reconsider. And on page 60, it's CFR 1003.2i, the very last sentence of the regulation says, if a motion to reconsider is granted, the decision upon reconsideration shall affirm, modify, or reverse the original decision made. So you only have three options under reconsideration under the regulations. It's either you affirm it, you modify it in some way, the original decision, or you reverse it. You do not get to bring in a whole new case and put on new evidence and litigate the case under new theories at all. So it's actually been conceded by the government it was reconsideration and that's limited in the regulations. Thank you. Thank you. Counsel? Yes. Judge Gould has another question. Yes, Your Honor. In terms of the board's procedure, was your client able to file a motion when you received the remand order? Could your client have filed a motion saying the scope of the remand order is too broad and it should be restricted? We filed a motion, Your Honor, a similar motion, saying that it's actually limited to just consideration of Jordison. We did file that motion, Your Honor. Did you file a motion like that with the board, asking the board to modify its order? No, Your Honor, we filed it with the IJ at that point because the proceedings were before the IJ and we couldn't go to the board, I believe. Okay, thank you. Thank you. All right. We appreciate counsel's argument. Very good arguments, both of you. We will then submit case 10-73448, Sandoval-Gomez v. Holder.
judges: England, GOULD, SMITH